Go ahead and call the next case, but before you. Okay, before we get started, I don't know if y'all have been sitting in the courtroom this morning here, but neither Justice Litton nor Justice O'Brien were able to be here today because of serious reasons, but they're both well, but they will be participating in the discussion of this case. They will be listening to audio tape of the oral argument and participating in the resolution of this matter. So they're here in spirit, but for the time being, you're May it please the court, counsel. June 29, 2012, the defendant in this case, Maria Santovi, went to the taste of Naperville. Driving home from that event, she rear-ended a vehicle driven by Sean Howard. Mr. Howard believed that the defendant would pull over and assess the damage, but instead the defendant kept driving. Mr. Howard followed the defendant's vehicle, a passenger in his vehicle, called 911, and she was relaying their location to the police, and the dispatcher was relaying that information to the police officers. One of the police officers who was pursuing the defendant's vehicle was Officer Caleando. Well, wait a minute. Where was any evidence that the police officer was actually pursuing the defendant's vehicle, other than showing up? Just so I understand the record that the police officer got to the house and the victim of the hit and run was out front and said the car wasn't there. You are correct. The police officers were trying to find the vehicle, but they did not catch up to the vehicle until the defendant pulled into the garage and Officer Caleando arrived just enough to see the garage door closed. So you are correct. Well, and I'm familiar with the facts. So this hot pursuit argument, what do you think? Well, I don't think we need to really get to the hot pursuit argument. The question here before the court is whether the defendant was seized when Officer Caleando stated that she was going to knock down the bathroom door if the defendant did not open it. The trial judge found that the entry into the house was consensual. Okay. What if nobody had opened the front door of the house? Yes. And they said, open that door, I'm going to kick it in. And in response to that, somebody opened the door. Would that be a consensual, and the police walked in, would that be a consensual entry? The theory would be the hot pursuit, that we would go by those facts, but the fact is that the defendant's husband did consensually allow. Okay, but the law is that if she's a resident of that house, she can refuse to consent to, for example, her belongings or her room or her area. Yes, but this was a husband and wife. Right. The husband can give free consent to entering the house. We didn't give free consent, there's no evidence she gave free consent to going in the bathroom. No, there's no evidence. And she was in there, and it was pretty clear she didn't want to come out. Yes, she was in there, she was vomiting, but we have to look to the words that were spoken. The husband said, he testified that the officer said, come on out here, can we talk to you. The officer testified that all she said was, if you don't open the door, I'm going to knock it down. The trial judge found that the defendant was illegally arrested when the officer threatened to kick down the door, so if the officer had told the defendant in this case, come on out, then that would be a seizure, because she would be ordering the defendant to do something, but in this case, the trial judge found, and we applied the double standard here, his facts are whether they are against the manifesto or the evidence, so we have to go by what he found, unless his court finds that they were against the manifesto or the evidence. Even if the husband let him in the house, and she's a resident of that house, she as a resident of that house has the right to exclude the police from areas that she doesn't want them in, doesn't she? Yes, she does. And so when they said, open that door or we're going to kick it in, after they've been standing there for some time, and it was clear that she wasn't going to walk out and talk to them, isn't that the functional equivalent of saying, come out, ordering her out of the bathroom? No, I disagree. All the officer wanted to do was speak with the defendant face-to-face. She didn't order the defendant to come out. It would be a different case, I believe, if that were the words. Then let's back up. Under that theory, if you agree that had the husband not been there, the wife, everything goes wrong, let's say she's there, and he comes to the front door and knocks on the door and he hears her back there, and the officer says, look, we want to talk to you. Open the door or we're going to kick it in. Yes. Under the hot pursuit argument, I would fall back on that argument. Okay, but let's assume that hot pursuit is in the dead letter office, because hot pursuit applies when an arrest is trying to be initiated on the street in the public, and then you follow somebody. Back in the day, I was involved in a few of those. But you've got to start the arrest, or try to attempt the arrest, out in the public, and then somebody runs away from you and you can follow them anywhere. Yes. But there was no arrest initiated or attempted to be initiated out in the public, would you agree? I would disagree. They attempted, well, I don't think the case law is that you have to start an arrest. You have to pursue a person. So in this case, they received information that the defendant was fleeing from this hit and run collision. I would make the analogy, if you have a bank robbery, the police are not there to see the bank robbery, but the defendant flees in a vehicle, and the police... John Jones, known criminal, we all know who he is, just robbed a Big Gulp, and probably headed home. So they're thinking, aha, John always goes home after he robs stores, so we're going to try to cut him off, get him before he gets in the house. Right. They don't. As they pull up, first thing they see is that door slamming shut, so John's in the house. Yes. Hot pursuit? It was a close case, I would say, but I would say that was hot pursuit, and this would be hot pursuit because the officers are trying to find the vehicle, but they don't catch up with the vehicle until she pulls into her house and closes the garage door. I believe the facts are sufficient to support the hot pursuit argument because the officer arrived there to see the door close. But he didn't know who he was pursuing. There's no testimony from the victim, even, that it was a man or a woman driving the car, it was just somebody driving, that car went in there. Right. So if, and at that point, for the sake, I mean, you'll agree with me that this, the defendant, had the right in her own home, notwithstanding her husband's allowing the police through the front door, that she had the right to go into a room, close the door, and exclude the police. Yes. Just to finish my argument, after the officer saw the vehicle drive into the garage, not drive in, but the garage door close, she then went up to the victim's vehicle and Mr. Howard said, yet the defendant just drove into the garage and closed the garage door. So this is more information that the officer knows when she approaches the front door. I believe that would be enough for the hot pursuit argument. Well, it certainly would have been enough for him to, after they talked to the husband and said, who just came home, he said, well, my wife did. It certainly would have been enough to call somebody and go get a warrant, wouldn't it? Well, she was also suspected of driving under the influence of alcohol. Based on what? Based on the fact that she ran into a vehicle and she fled from that accident. I think most people understand that you'll get a lighter, it's less of a sentence or less of a punishment if you leave the accident rather than caught there at the accident under the influence of alcohol. So is that like an exigent, are you making the argument, exigent circumstances, exception to the warrant requirement? Well, we really don't get to the under year scenario, that would be an exception to the warrant requirement. But in this case, the trial judge found that the entry into the house was consensual. There was no entry into the bathroom. Only the narrow question for this court, I believe, is whether the defendant was under arrest or seized when the trial judge held that the defendant was arrested when the officer said I'm going to open this door or I'm going to kick it out. So that's the narrow issue before this court. I believe that the officer did not seize the defendant just by those words. She had to do something else. She had to restrain the defendant's movement. And there's no way that that order restrains her. Well, he in essence ordered her out of a place that she had a legal right to be in, and specifically in a room in her own home. Now you're inferring that the officer ordered her out of the bathroom. Well, I'm inferring. What's the other option, to wait and sit in there and hope you don't get hit by that door that comes flying in when the police kick it down? Well, the officer threatened to, but she never did kick down the officer. So is that what we've got? If an officer threatens to kick down our door, we've got to wait for him? It was persuasion for the defendant to open the door. And I know one officer testified, she was a paramedic or something, and was concerned about a head injury, and so made that argument in the trial court, and I got the impression the trial judge wasn't buying that. I would agree with your assessment. And of course the trial judge is free not to buy it, right? Yes. Okay. So the question here is whether the defendant was seized when the trial judge held that the defendant was under arrest at the time the officer merely threatened to kick down the door. And you need some seizure restriction of movement, and that can be by physical force or a show of authority. And you don't think threatening to kick a door down is a show of authority and force? It is a show of authority, but it doesn't necessarily confine your movement. She was not confined by the officer's statement, by the officer telling the defendant to open the door. She actually had more movement. She confined herself in the bathroom. So the problem here in this case is because there was no restraint of movement. And I don't believe that that statement by the officer… Okay, I'm going to open the door, and I'm going to say, you know what, officer, it's been a long day. I'm going to bed. Talk to you tomorrow. And I could walk into the bedroom and close that door and go to bed? Well, first I would disagree with your open the door, I'm going to kick it in. The officer did not say that, and the trial judge did not find that. But yes, the defendant had the opportunity if the officer said open the door, or I will kick it in, and she opens the door and goes into her bedroom, she's free to do that. Because… Do you really believe the reason why this person is sitting in a room in her home and the police say, what didn't the officer say, I'm going to kick that door in if you don't open it? No, the officer said open the door or I'm going to knock it down, is what she testified to. So it's semantics, but they're very important semantics. And what the words were, were very important in this case to whether the defendant's freedom of movement was restrained by the officer's words, and I say that they were not. She was free to open the door, she did open the door, I would argue that it was consensual, but even if you don't believe it was consensual. What happened after the officer confronted the defendant, the officer's first words were, will you accompany me to the garage to discuss this collision, which the defendant agreed. Anything else there? No, I will save my time for rubato. Okay, thank you Mr. Leonard. Mr. Wallace. Thank you, your honor. May it please the court, Mr. Leonard and your honors, in spirit, I'd like to reintroduce myself. My name is Terry Wallace. Mr. Hamill normally comes down here and argues these briefs.  Just for the record, I'd like to clarify something from the beginning. We did file a motion to supplement the briefs for additional authority. We cited People v. LaFleur. By accident, we meant to cite two cases. The other one was People v. Dawn, which is 2-13-11-12-0025. Let me tell you why, just to make things fair. If any authority you wanted to file and didn't, if you want, file it within seven days and we'll give the state 14 days thereafter to respond to it.  Mr. Leonard, is that fair? That sounds fine. Feel free to say no. No, it sounds good. Based on the fair for us to include People v. Dawn on the motion, I'm not going to argue either case because your honors are all well aware of the law. Briefly, the facts, your honors are well aware of the facts, but I just want to mention and clarify a couple of things. On June 29th in Joliet, it was Taste of Joliet that was going on. REO Speedwagon was playing. I was there. I was there for three songs, and then a horrible storm came in. But at any rate, Ms. Santobi was at Taste of Joliet. She eventually left. She was involved in a minor traffic accident. She proceeded home. The complaining witness called the police. Like your honor indicated, the police arrived in front of Ms. Santobi's house. They never chased her. There was no chase. There was no hot pursuit going on. And Officer Caliendo and Officer Cook approached the front door of the residence. They spoke to Mr. Santobi. Arguably, according to the trial court, consent was given in. I disagree with that, but that's for your honors to decide. And Officer Caliendo, who's a tactical paramedic, proceeds right over to the bathroom door because she's there, according to the trial court, for a wellness check. But that's how the court characterized it because she was concerned. Since she's a trained paramedic, she was concerned about the well-being of Ms. Santobi. And up to this point in time, she doesn't even know what Ms. Santobi looks like. So she then proceeds to knock on the door, and the transcript is clear. It's for 45 seconds to a minute. And then she says, if you don't open up the door, we're going to knock it down. And your honors can only imagine that their knocking on the door progressively got louder towards the end of that minute. So Ms. Santobi, who has a history of intestinal problems, eventually opens up the door. She's taken out to the garage and eventually transported back to the Plainfield Police Department and formally placed under arrest at that point in time. But I'd submit your honors that the arrest occurred when Officer Caliendo was making the threatening statement, if you don't open up the door, we're going to knock it down. The law is clear. We all understand when an arrest occurs. It's when a reasonable person, innocent of any crime, feels as though they're no longer free to leave. It's under U.S. v. Mendenhall. There's a number of factors on there. And two of those factors are the number of officers present and the use of the language. It's not an exhaustive list. It's all listed in the briefs. But I'd submit your honors that when someone, you're in the privacy of your own bathroom and there's no place more private in your house than your bathroom. And when someone is saying, if you don't open up the door, we're going to knock it down, what's the alternative? I mean, you're not going anywhere when you open up that door. She's placed under arrest at that point in time. She's no longer free to leave, and the arrest clearly occurred at that point in time. And we have to remember that Officer Caliendo was there to check on her well-being. She never wrote a police report on this, and more importantly, there was no testimony that she ever questioned my client after the door was open. Are you okay? Can we help you? What's wrong? Do you need an ambulance? None of that ever came out of her mouth. She was there for one reason, to place her under arrest. That's why she made those statements. If you don't open up the door, we're going to kick it down. And the accident, I mean, it's a minor traffic accident, and I believe Mr. Howard, the complaining witness, testified that his damage was less than $300, between $250 and $300. And, of course, all that's irrelevant to the issues before us today, right? The amount of damage to the car? Yep. Well, it's just a minor traffic accident, and I'm only mentioning that for that purpose. Allegedly, she's there to investigate a minor traffic accident, but she's concerned about Ms. St. Toby's well-being. Well, I think it's pretty clear, I mean, with the trial judge, that he was free to believe that testimony or not, and it seems pretty clear that he didn't. Yes. And so our job is basically to defer to the trial court's determination of facts, unless they're manifestly erroneous or against the manifest way of the evidence. But I think the state even concedes that the trial judge wasn't buying that. Okay. And for hot pursuit, hot pursuit doesn't apply here. Whenever we think of hot pursuit, police are chasing them in their car, another car, and run into the house. Or someone's on foot, the police are chasing them on foot, that person runs into the house. The facts on this are clear. There's no police chase whatsoever. The first contact comes when my client is already inside the house. And for hot pursuit to apply, an arrest has to be initiated in public, and then the person runs into the house. Well, I suppose if a police officer sees somebody running from the scene of a crime and is clearly chasing that person, that's a hot pursuit. But you're pursuing somebody when you can see them, you know where they are, and that. I mean, I guess you don't have to yell to the guy you're under arrest, but if you're chasing somebody, you pull up to an armed robbery and somebody's bolting out the door, you can follow them. And you're chasing them, that's a hot pursuit, whether you ever got the time to tell them you're under arrest or not. But none of those are facts from what I hear, because there's no evidence that I'm aware of, and I'm sure you'll probably agree with this, that there was ever a police car behind the defendant's car, chasing it and trying to stop it. Yes. So I don't believe the hot pursuit doctrine applies. Based on the briefs in the trial court's ruling, I'd ask you to affirm the trial court. Thank you. That it? Yes. Mr. Leonard, any rebuttal? Just briefly. I'll just stand on my brief for the hot pursuit argument. It's fully briefed. I'd just like to focus this court's attention on the issue, which I believe that needs to be decided, is whether the defendant was under arrest when Officer Caliendo stated, if you don't open the door, I'm going to knock it down. Was that an arrest? That's what the trial judge found. I believe it's erroneous and not supported. Well, isn't the test, would a reasonably innocent person feel free to just say, gee, no thanks, officer, I've got other things to do. Nice chatting with you, but got to go. A reasonable person could do that, but this is a matter of law, whether the defendant was arrested when the officer said those words. That's what the trial judge found, and that's what I would like this court to focus on, whether the trial judge was wrong when he found that. Would you agree that arrested would be the same as seized? The same thing. Do you remember Bostic versus Florida or something? Yes. I haven't looked at it in this case, but as you'll remember, years ago, I was writing dissents for years on Fourth Amendment cases, and in Bostic, that's where the police get on the bus, and they say, well, the person was on a bus, they had no place to go, but they said, well, it's not so much freedom of movement as would a reasonably innocent person feel free to refuse to answer police questions or decline the request to search their bags or whatever. Right. That would be at the trial judge's level, and he found that it was a seizure. But at the appellate level, I would like this court to address the trial judge's ruling, whether that was an arrest. Of course, this court can consider whether a reasonable person under the circumstances would feel to leave. Would you agree with me that if we were to find that a reasonable person, a reasonable innocent person, would not feel free to decline the police officer's demand to open or request to open that door, then it was indeed a seizure? Yes, I would agree with that. Okay. Other than that, I would just ask that this court reverse the trial judge's order and remand the cause for trial on demerits. All right. Well, thank you both for your arguments here this morning. The matter will be taken under advisement. And by the way, Justice, as I said, Fort Littman and O'Brien will be participating in the discussion. They'll listen to the audio tape and probably congratulate me on all my great questions. And then a written disposition will be issued in due course. So be careful driving home in this weather. And let's see.